**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CHRISTINE G.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

Case No. 2:22-cv-1969

Graham, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Christine G. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error, all which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I. Summary of Administrative Record**

On October 16, 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging she became disabled on August 28, 2017, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a telephonic hearing held on February 3, 2021 Plaintiff appeared with counsel and gave testimony before ALJ Matthew

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Winfrey. Vocational Expert Roxanne Benoit also appeared by telephone. On April 30, 2021, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 104-127 ).

Plaintiff was born on July 10, 1992 and was 25 years old on her alleged date of disability. She has a limited education and no past relevant work. (Tr. 125).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "obesity, degenerative disc and joint disease of the spine; fibromyalgia; plantar fasciitis; posterior tibial tendinitis; a depressive disorder; an anxiety disorder; and a posttraumatic stress disorder (PTSD)." (Tr. 107). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She could stand/walk no more than 4 hours during the workday. She could occasionally climb ramps and stairs. She would be precluded from climbing ladders, ropes and scaffolds. She could frequently balance. She could occasionally stoop, kneel, crouch, and crawl. She could perform simple, routine tasks but not at a production rate place such as on an assembly line. She could have occasional interaction with supervisors, coworkers, and the public, but interactions would be superficial, defined as, interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution. She could tolerate occasional changes in duties and the work setting.

(Tr. 112).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including office helper, document preparer, sorter and final assembler. (Tr. 126).

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to properly consider the supportability factor when evaluating the opinion evidence; (2) improperly creating a definition of superficial interaction; and (3) failing to properly evaluate the opinions of Dr. Westra, Plaintiff's treating physician. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.[5]

**I.     Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

---

[5] Plaintiff's first and third assignments of error raise similar issues and will be considered together.

omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. ALJ's evaluation of the opinion evidence*

Plaintiff argues that the ALJ improperly evaluated the opinion evidence. Specifically, Plaintiff contends that the ALJ failed to properly evaluate the opinions of Dr. Westra and Dr. Love in accordance with Agency regulations. Plaintiff further argues that ALJ erred by assigning greater weight to the findings of the state agency physicians. Plaintiff's contentions will be address in turn.

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 404.1520c. The new regulation at 20 C.F.R. § 404.1520c differs from the previous regulation at 20 C.F.R. § 404.1527. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the

5

"controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(a), (b).

The supportability and consistency factors are the most important factors considered when determining how persuasive an ALJ finds a medical source's medical opinions or prior administrative medical findings to be. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he considered the medical opinions. See 20 C.F.R. §§ 404.1520c(b)(2)-(3). Further, in evaluating the statements from the state agency reviewing sources, an ALJ will also consider the evidence in accordance with the new regulations. See 20 C.F.R. § 404.1513a(b)(1)(2017), 404.1520c.

  a. *Dr. Westra*

Notably, in December 2020, Dr. Westra completed a primary care medical statement. (Tr. 1029-30). Dr. Westra diagnosed Plaintiff with fibromyalgia, PTSD, anxiety, depression, asthma, and chronic low back pain. (Tr. 1009). Dr. Westra listed Plaintiff's symptoms as low back pain, hip pain, muscle weakness, joint pain, morning stiffness, anxiety, depression, headaches, memory impairment, and chronic fatigue. Id. Dr. Westra opined that Plaintiff could stand/walk less than 2 hours and sit for 2 hours in an 8-hour working day; would need breaks every 2 hours for 30 minutes; would need a cane for pain and insecurity; would be off task 25 percent of the day; and would miss more than 4 days of work per month. (Tr. 1029-30).

In formulating Plaintiff's RFC, the ALJ found Dr. Westra's opinion to be "less persuasive." In so concluding, the ALJ determined that "while reducing in exertional

capacity including standing/walking is supported by the evidence of record, the severity of the reduction noted by Dr. Westra is not supported by the objective treatment evidence of recording demonstrating ongoing 5/5 strength in the extremities, lack of sensory deficits or neurological deficits, and normal gait and station with normal muscle tone. (Tr. 124). The ALJ further determined that the requirement for an assistive device was also inconsistent with the evidence showing no atrophy or weakness, intact strength, intact muscle tone, and normal gait/station. Id.  The ALJ found that the off-task limitation found by Dr. Westra was "less consistent with the record evidence because Plaintiff noted improvement in her symptoms, including pain with the conservative treatment using therapy interventions, TENS unit, and medication management.  Id.  The ALJ also found Dr. Westra's opinion that Plaintiff would be absence from the workplace inconsistent with the record which showed she was not involved in a treatment modality that required a recovery period, she did not require recurrent emergent treatment for symptoms described as intractable pain, and she did not require hospitalization for extended duration related to her documented conditions and evidenced symptoms. (Tr. 124).

Plaintiff argues that the ALJ's evaluation of Dr. Westra's opinion failed to consider the supportability factor as outlined above.  Plaintiff's contention lacks merit.  As detailed above, the ALJ explicitly detailed why he found Dr. Westra's limitations were not supported by the objective evidence of record.  (Tr. 124, citing Tr. 997-1021, 1032-1293, 1324-47).  The ALJ further detailed how Dr. Westra's findings were not consistent with the record evidence.

b. *Dr. Love*

Plaintiff began treating with Dr. Christopher Love, a chiropractor, in September 2016. (Tr. 427). She continued to see them through at least June 2, 2021. (Tr. 577). On December 1, 2020, Dr. Love completed a chiropractor specialist statement. (Tr. 1025). Dr. Love reported Plaintiff's symptoms as problems with range of motion in the neck and subjective complaints of pain. Id. Dr. Love opined that Plaintiff could stand/walk for about 4 hours and sit for at least 6 hours during a normal 8-hour working day. Id. Dr. Love also opined that Plaintiff would need to take unscheduled breaks during a workday. Id. Dr. Love noted that chronic fatigue and pain were the symptoms that would cause the need for breaks. Id. Dr. Love opined that Plaintiff would be "off task" during 20% of the usual workday. (Tr. 1026). He also opined that her impairments would likely produce both "good days" and "bad days." Id. Dr. Love opined that Plaintiff would likely be absent from work about 4 days per month as a result of her impairments. Id. Dr. Love also opined that Plaintiff's physical impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. Id.

With respect to Dr. Love, the ALJ found that the reduction in physical exertional capacity, specifically standing/walking, consistent with the evidence of record documenting low back pain, joint stiffness, bilateral foot pain, and her obese body habitus. The ALJ further determined that the time off-task limitation was less persuasive, as the record supports that Plaintiff continued to engage in routine activities that required sustained attention despite her reports of pain, including watching television, playing video games, reading, and watching her nephew. (Tr. 123). The ALJ also found that Dr. Love's off-task limitation was also inconsistent with the evidence showing her symptoms

8

continued to remain generally controlled/stable with the use of conservative treatment, such as pain medication and muscle relaxers. (Tr. 123). The ALJ also found Dr. Love's limitation that Plaintiff would be absent from work 4 days per month inconsistent with the evidence of record as Plaintiff did not participate in treatment with a recovery period or receive recurrent emergent treatment resulting in hospitalizations of any extended duration. (Tr. 124).

Plaintiff again argues that the ALJ failed to address the supportability factor in his evaluation of Dr. Love's opinion. However, as detailed above, the ALJ explicitly detailed why he found Dr. Love's limitations were not supported by the objective evidence of record. (Tr. 123-24). Specifically, the ALJ found the off-task limitation less persuasive, as the record supports Plaintiff's continued to engage in routine activities that required sustained attention despite her reports of pain, including watching television, playing video games, reading, and watching her nephew. (Tr. 123). In addition, the ALJ highlighted that Plaintiff's symptoms remained generally controlled/stable with the use of conservative treatment, such as pain medication and muscle relaxers (Tr. 123, 966, 993, 995). For these reasons, the undersigned finds that the ALJ properly evaluated Dr. Love's findings in accordance with Agency regulations.

c.   *State Agency Physicians*

Last, Plaintiff argues that the ALJ improperly evaluated the opinion of the state agency doctors by failing to expressly consider the factors outlined in 20 C.F.R. § 404.1520c with respect to Plaintiff's physical limitations. In this regard, Plaintiff contends that Dr. Westra should have been afforded greater weight than those of the state agency reviewing physicians because he treated her since March 2020. Plaintiff further contends

9

that the state agency physicians should have been afforded less weight because they did not review Plaintiff's entire medical record. Plaintiff's contentions again lack merit.

In formulating Plaintiff's RFC, the ALJ indicated that he read and considered the opinions of the state agency physicians; and determined as follows:

> The prior physical findings noted the claimant could perform a reduced range of light work with postural limits. The undersigned finds the reduction to light work is partially consistent with the record. The undersigned finds the reduction to light level lifting consistent with the claimant's reports that she could lift up to maybe 50 pounds (Testimony). The undersigned finds the reduction to light work also consistent with the presence of joint stiffness and reports of muscle tenderness, as well as fibromyalgia, spinal degeneration. However, the undersigned finds the objective evidence showing spinal degeneration, reports of low back pain requiring intermittent pain medications, steroid medications, and muscle relaxers, reports of joint stiffness, intermittent reduced range of motion of joints, muscle tenderness, and bilateral foot pain as well as her body habitus, supported greater limitation and reduction in standing/walking. The undersigned has not adopted the postural limits verbatim, but finds the postural limits are consistent with the evidence of record given the claimant's joint stiffness, reports of back pain, tenderness to the spine and at times to the joints, bilateral foot pain associated with plantar fasciitis, and her body habitus. The undersigned finds the lack of environmental limitation was consistent with the evidence showing 5/5 strength in the lower extremities with normal muscle tone and with the evidence supporting no evidence of sensory deficits or neurological problems in the extremities. Therefore, the undersigned finds the prior administrative findings partially persuasive as discussed herein, but notes they were not entirely persuasive as the objective evidence of record, including hearing level evidence and additional claimant testimony supported greater physical limits and warranted a more restrictive physical functional capacity.

(Tr. 122).

Thus, as evidenced above, the ALJ properly considered the factors outlined in 20 C.F.R. § 404.1520c; specifically the supportability and consistently factors. As noted by the Commissioner, the ALJ did not adopt the state agency postural limitations verbatim but found them consistent with the evidence of record given Plaintiff's joint stiffness, back pain, tenderness to the spine and joints, bilateral foot pain associated with her plantar

10

fasciitis, and her body habitus. (Tr. 122). 20 C.F.R. § 404.1520c(c)(2).  The ALJ also noted that the state agency physicians' findings were consistent with the evidence showing 5/5 strength in her lower extremities with normal muscle tone, and no sensory or neurological deficits. (Tr. 122, 1009, 1013, 1019, 1063, 1178, 1196, 1233, 1258, 1280, 1306, 1328, 1355). Thus, the ALJ's residual functional capacity finding was consistent with the state agency opinions, yet he also found that the record evidence as well as Plaintiff's testimony supported greater physical limitations.  As such, he customed a more restrictive physical functional capacity, than that found by the state agency physicians. (Tr. 122).

Additionally, as noted by the Commissioner, while the state agency doctors did not have access to the entire record at the time of their opinions, the ALJ took this into account and considered the more recent evidence. (Tr. 104-27). *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009).  Moreover, Plaintiff fails to point any evidence submitted after their opinions that would have changed their findings.  *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (affirming the Magistrate Judge's decision which noted that "[t]here will always be a gap between the time the agency experts review the record and . . . the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.").

Upon careful review, the undersigned finds that the ALJ properly evaluated the opinion of the state agency physicians.  *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This Court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported

11

by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ reasonably evaluated the medical opinion evidence and accounted for the credible limitations in the residual functional capacity finding. It was reasonable for the ALJ to rely on the state agency opinions and even to find these opinions more persuasive than the unduly restrictive opinions of Dr. Westra, and Dr. Love. Cf. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error."); cf. *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion). Ultimately, it is up to the ALJ to determine the weight that each opinion is due. See *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (unpublished).

It is the duty of the ALJ to resolve any conflict among the evidence and weigh the medical source opinions. See *Mullins v. Secy. Of Health and Human Servs.,* 836 F.2d 980, 984 (6th Cir.1987). Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir.1987); *King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983). See also *Boyle v. Sullivan,* 998 F.2d 342, 347 (6th Cir.1993); *Tyra v. Secretary of H.H.S.,* 896 F.2d 1024, 1028 (6th Cir.1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work related

12

activities. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

2. *Superficial Interaction Limitation*

As noted above, the ALJ limited Plaintiff to occasional superficial interaction with supervisors, coworkers, and the public.  (Tr. 112). The ALJ noted that superficial interaction would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution.  Id.  Plaintiff now argues that the ALJ erred by improperly creating his own definition of superficial interaction without any explanation or justification.  Plaintiff's contention lacks merit.

Here, the ALJ's RFC limitation for superficial interaction is substantially supported by the evidence of record.  In this regard, the ALJ indicated that he read and considered the administrative findings from the state agency psychologists. Upon review of Plaintiff's medical record, the state agency psychologist found that Plaintiff had sufficient capabilities to perform simple, routine work tasks in a setting where there was no demand for a fast pace; could engage in superficial interactions with coworkers, bosses, and the general public; and could handle the stress and pressure associated with completing simple and routine work-related tasks.  (Tr. 122, 580-87).  While the ALJ did not adopt their findings verbatim, he found the opinions of the state agency psychologists to be generally consistent with the evidence of record and generally persuasive. Notably, the ALJ found the social functioning limits consistent with her reports of intermittent irritability, preference to withdraw from others and issues focusing due to reported mental fog. (Tr. 122).

In making this determination, the ALJ noted that Plaintiff was capable of cohabitating with her family and with her boyfriend without significant deficit. (Tr. 111, 140). He also noted that she had friends and enjoyed hanging out with her friends and family. (Tr. 802, 948). The ALJ indicated that Plaintiff reported some issues getting along with her family, but noted she could get along fine with authority as long as they were not abusive. (Tr. 111, 803-04). She could go to the store, which required interacting with the public and babysat her nephew (Tr. 799, 948). The ALJ also noted that Plaintiff received conservative care with medications prescribed by a general practitioner. (Tr. 111, 947-48). She received counseling but did not require recurrent emergent treatment due to acute mental symptom exacerbation nor did she require hospitalization. (Tr. 111, 947-48).

Furthermore, as noted by the Commissioner, Plaintiff did not object to the ALJ's definition of superficial interaction during the administrative hearing or provide an alternative definition during cross-examination. (Tr. 154-55). Plaintiff fails to provide any evidence or argument to establish that her limitations are greater than those found by the ALJ. Plaintiff also fails to assert that she cannot perform the jobs identified by the vocational expert due to her social limitations. *See Sarah A. v. Comm'r of Soc. Sec.*, No. 1:21-cv-599, 2022 WL 3584353 (S.D. Ohio Aug. 22, 2022) (citing Milliken v. Astrue, 397 F.App'x 218, 223 (7th Cir. 2010) ("Unskilled work would not seem to require intense contact with supervisors and coworkers….") and SSR 85-15, 1985 WL 56857 ("[Unskilled] jobs ordinarily involve dealing primarily with objects, rather than with data or people….")).

An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish her RFC. See id. §

416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC). Thus, it is well established that Plaintiff bears the burden to establish her disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability."). She has failed to do so here.

Here, the record provides substantial evidence to support the ALJ's assessment of Plaintiff's RFC, and Plaintiff failed to prove that she had additional limitations. The Commissioner's findings must stand if substantial evidence supports them, regardless of whether the reviewing court would resolve conflicts in the evidence differently or if substantial evidence also supports the opposite conclusion. See *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). See also *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004) (stating "substantial evidence is a fairly low bar").

This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Sec'y of Health &*

15

*Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case be **CLOSED**.

<u>s/Stephanie K. Bowman</u><br>
Stephanie K. Bowman<br>
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CHRISTINE G. | Case No. 2:22-cv-1969 |
| Plaintiff, | Graham, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).